IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| LINDA MICHELLE M., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Case No. 3:19-cv-00328-B-BT |
| § | |
| ANDREW SAUL, § | |
| Commissioner of the § | |
| Social Security Administration, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Linda Michelle M.[1] filed a civil action seeking judicial review pursuant to 42 U.S.C. § 405(g) of a final adverse decision by the Commissioner of Social Security. For the reasons explained below, the Commissioner's decision should be AFFIRMED in all respects.

**Background**

Plaintiff alleges that she is disabled due to various physical and mental impairments, including HIV, deformity of both thumbs, hernias, and depressive disorder. Pl.'s Br. 3-6 (ECF No. 16); Administrative Record 38 (A.R.) (ECF No. 13-1). She alleges disability beginning January 1, 2005. Pl.'s Br. 2. After her

---

[1] The Court uses only Plaintiff's first name and last initial as instructed by the May 1, 2018 Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

applications for supplemental security income were denied initially, and on reconsideration, Plaintiff requested a hearing before an administrative law judge (ALJ). That hearing took place in Dallas, Texas, on February 8, 2018. A.R. 15, 36. At the time of the hearing, Plaintiff was 49 years old. *See id.* at 39. She has an eighth grade education (*id.* at 40), can communicate in English but has trouble reading and writing (*id.*), and has some past work experience as a telemarketer (*id.* at 59).

The ALJ issued her written decision on June 18, 2018. *Id.* at 29. The ALJ found that Plaintiff was not disabled and, therefore, not entitled supplemental security income. *Id.* At step one of the five-step sequential evaluation,[2] the ALJ found Plaintiff had not engaged in substantial gainful activity since September 28, 2016. A.R. 17. At steps two and three, the ALJ found that Plaintiff had the severe impairments of degenerative joint disease in both hands and wrists, ventral hernias, HIV, major depressive disorder with anxious distress, and moderate

---

[2] "In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; at the fifth step, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *Id.* at 448; *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland*, 771 F.3d at 923 (citing *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995)); *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987) (citing *Barajas v. Heckler,* 738 F.2d 641, 643 (5th Cir. 1984) (per curiam)).

cocaine disorder; nonetheless, the ALJ found that her impairments, or combination of impairments, did not meet or equal the severity of any listed impairment in the social security regulations. *Id.* at 17-18. At step four, the ALJ found Plaintiff has the residual functional capacity (RFC) to perform light work, except that she can "occasionally stoop, and frequently finger with the bilateral upper extremities." *Id.* at 20. Moreover, the ALJ found that Plaintiff can "understand, remember, and carry out simple instructions, make simple work-related decisions, maintain attention and concentration for two-hour segments, . . . respond appropriately to changes in the routine work settings[, and while] limited to occasional supervisory and coworker contact, . . . can tolerate incidental public contact." *Id.* At step five, relying on the testimony of a vocational expert (VE), the ALJ found that Plaintiff could work as a cleaner, a power screwdriver operator, or a photocopy machine operator. *Id.* at 28. Following the administrative hearing, Plaintiff's counsel filed written objections to the VE's testimony on the grounds that the proposed occupations would require a high school diploma. *Id.* at 28-29. The ALJ overruled the objection. *Id.* at 29.

  Plaintiff appealed the ALJ's decision to the Appeals Council. The Council denied Plaintiff's request for review. *Id.* at 1. Plaintiff then filed this action in federal district court, arguing that the ALJ did not properly evaluate medical opinion evidence in determining Plaintiff's RFC, failed to incorporate Plaintiff's "significant physical and mental limitations" into her RFC assessment, and failed to establish existence of work in significant numbers that Plaintiff can perform.

3

Pl.'s Br. 1-2. As a result, Plaintiff argues, the ALJ's decision is not supported by substantial evidence. *Id.* at 8.

## Legal Standards

Judicial "review of Social Security disability cases 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard.'" *Copeland*, 771 F.3d at 923 (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)); *see also Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (citation omitted). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted); *see also Copeland*, 771 F.3d at 923 ("Substantial evidence is 'more than a mere scintilla and less than a preponderance.'") (quoting *Perez*, 415 F.3d at 461). The Commissioner, and not the courts, resolves conflicts in the evidence; thereafter, the Court may not "reweigh the evidence or try the issues de novo." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (per curiam) (citing *Cook v. Heckler,* 750 F.2d 391, 392-93 (5th Cir. 1985); *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam)). Accordingly, the Court may not substitute its own judgment for the Commissioner's, and it may affirm only on the grounds that the Commissioner stated to support his or her decision. *Copeland*, 771 F.3d at 923 (citing *Cole v. Barnhart*, 288 F.3d 149, 151 (5th Cir. 2002) (per curiam)).

4

## Analysis

Plaintiff makes the following arguments: (1) the ALJ erred by failing to consider the factors set forth in 20 C.F.R. § 416.927 when evaluating the medical opinion evidence and failing to incorporate the limitations recognized by state agency medical consultants (SAMC) even though she gave those opinions "great weight" (Pl.'s Br. 13-14); (2) the ALJ erred by failing to incorporate limitations which she recognized into Plaintiff's RFC (*id.* at 14); and (3) the DOT is out of date, and the ALJ erred by failing to establish the existence of work Plaintiff can perform as defined by the Occupational Outlook Handbook or the Standard Occupational Classification Code (*id.* at 16-18). As a result of these alleged errors, Plaintiff contends that the ALJ's decision is not supported by substantial evidence and remand is required. *Id.* at 20-21.

### I.

Plaintiff submitted two medical source opinions for the ALJ's consideration. Dr. Deboer, Plaintiff's treating physician from an HIV clinic she visited, acknowledged that Plaintiff's "disability is largely psychiatric and not physical" but estimated that Plaintiff could stand and walk less than two hours and sit four hours out of an eight-hour workday, could rarely lift 10 pounds and never lift 20 pounds, could grasp and perform fine manipulation less than five percent of the time, and would be off-task more than 25% of the time. A.R. 539-44. An opinion signed by both Dr. Zareena Raffi and Advanced Practice Nurse (APN) Johnes Monyocho further indicated that Plaintiff had no useful ability in any area of function,

5

including making simple work decisions, accepting instructions, and responding appropriately to criticism; was subject to spells of sadness, anger, outbursts, etc.; and would likely be absent from work more than four days per month on average due to her mental health. *Id.* at 536-38. The ALJ afforded these treating source opinions "little weight [because] . . . the extreme limitations [reflected in the opinions] are not supported by the evidence, particularly the objective medical and clinical findings contained in the claimant's treating notes." *Id.* at 25. Plaintiff contends that the ALJ failed to properly consider the treating source opinions and, as a result, her RFC is not supported by substantial evidence.

## A.

The Regulations provide six-factors for an ALJ to consider in determining the degree of weight to afford a medical source opinion. *See* 20 C.F.R. § 416.927(c); *Bentley v. Colvin*, 2015 WL 5836029, at *8 (N.D. Tex. Sept. 30, 2015). The factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion by medical signs and laboratory findings; (4) the consistency of the medical opinion with the record; (5) whether the medical opinion is one of a specialist or not; and (6) any other factors the claimant or others bring to the Commissioner's attention. 20 C.F.R. § 416.927(c). Generally, the ALJ is free to reject the opinion of any medical source when the evidence supports a contrary conclusion, but where the ALJ rejects the sole relevant medical opinion before it, it must engage in a detailed § 416.927(c) analysis. *Newton v. Apfel*, 209 F.3d 448,

456 (5th Cir. 2000); *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009) (per curiam). The ALJ, however, does not have to explicitly mention § 416.927(c)'s factors in rejecting a medical source opinion as long as the ALJ's explanation for doing so evidences that he or she indeed did consider them. *See Latina M.H. v. Berryhill*, 2019 WL 4735803, at *5 (N.D. Tex. Sept. 27, 2019).[3]

In this case, the ALJ expressly stated she considered the opinion evidence before her "in accordance with the requirements of 20 C.F.R. § 416.927." A.R. 20. While she did not specifically enumerate each § 416.927(c) factor and signpost her analysis according to those factors, she was not required to do so in order to satisfy the Regulations. *See Steven T. W. v. Berryhill*, 2019 WL 1429347, at *5 (N.D. Tex. Mar. 28, 2019) (holding the ALJ did not err by failing to detail analysis of § 404.1527(c)'s factors when determining the weight to assign treating source opinion); *Ida G. v. Berryhill*, 2019 WL 1386280, at *6 (N.D. Tex. Mar. 10, 2019), *rec. adopted*, 2019 WL 1382073 (N.D. Tex. Mar. 27, 2019) (same). Further, the ALJ's explanation for affording little weight to the treating source opinions

---

[3] *Latina M.H.* assesses the adequacy of an ALJ's consideration of the factors set forth in 20 C.F.R. § 404.1527(c) rather than those set forth in § 416.927(c). Section 416.927(c) applies in cases like this one where the claimant seeks supplemental security insurance, while § 404.1257(c) applies where the claimant seeks disability insurance benefits. *See* 20 C.F.R. § 404.1527(b), (c) (stating for Title II claimants that "we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive" and "[r]egardless of its source, we will evaluate every medical opinion we receive"); 20 C.F.R. § 416.927(b), (c) (same for Title XVI claimants). Cases addressing the adequacy of an ALJ's consideration of the § 404.1527(c) factors are nonetheless applicable here because the two provisions are identical and require the same analysis. *See Bentley*, 2015 WL 5836029, at * 6.

evidences that she actually considered and applied the § 416.927(c) factors. First, with respect to Dr. Deboer's opinion, the ALJ correctly pointed out that Dr. Deboer was one of Plaintiff's physicians at the Bluitt-Flowers Health Center (BFHC) and cites Plaintiff's records from BFHC. A.R. at 23-24. Moreover, Plaintiff's records from BFHC reflect that she has visited the facility numerous times over a distinct period. *See id.* at 381-467. Dr. Deboer's name is clearly reflected on the notes that Dr. Deboer made, which clearly reflect the day and time of Dr. Deboer's visits with Plaintiff. *Id.* at 467-72, 476-80, 494-505, 513-19. Moreover, Dr. Deboer indicates on her medical source statement the frequency and length of contact she has had with Plaintiff. *Id.* at 539. Because the ALJ cites these medical records in her opinion and discusses more than one visit Plaintiff made to BFHC, the ALJ's hearing decision evidences that she considered the duration and frequency of Dr. Deboer's treatment of Plaintiff, the first § 416.927(c) factor. *Jacquelyn S. v. Comm'r of Soc. Sec. Admin.,* 2019 WL 4359412, at \*5 (N.D. Tex. Aug. 27, 2019), *rec. adopted,* 2019 WL 4318885 (N.D. Tex. Sept. 12, 2019) (ALJ's discussion of treatment records evidences that he considered relevant regulatory factors when determining the weight to assign treating source opinion).

The hearing decision also evidences that the ALJ considered the second and fifth § 416.927(c) factors, the nature and the extent of the treatment and whether the medical source is a specialist. The ALJ's hearing decision mentions that Dr. Deboer treated Plaintiff specifically for HIV. A.R. at 24. Finally, the ALJ's decision clearly evidences that she considered the supportability and the consistency of Dr.

Deboer's opinion, the third and fourth factors. Indeed, she states that the objective medical evidence and clinical findings from the treating notes are inconsistent with the extreme limitations Dr. Deboer attributes to Plaintiff. *Id.* at 25.

With regard to the mental health treating source opinion, Plaintiff first points out that the ALJ attributes the treating source opinion to APN Monyocho when in fact it was the opinion of Dr. Raffi. While Dr. Raffi and APN Monyocho both signed the opinion, *id.* at 538, the record is clear that APN Monyocho treated Plaintiff more than Dr. Raffi did. *See id.* at 333, 345, 350, 353, 356, 360, 364. Moreover, APN Monyocho is eligible to give a treating source opinion. *See* 20 C.F.R. § 416.927(a)(2) ("Treating source means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you."). To the extent Plaintiff argues it is error for the ALJ to have omitted Dr. Raffi's name from the hearing decision, the Court concludes it is not.

The ALJ's decision demonstrates she considered each of the required factors in affording the mental health treating source opinion little weight. First, the administrative record reflects that Plaintiff visited Metrocare Services, where Dr. Raffi and APN Monyocho work, numerous times over a distinct period. A.R. 318-77. Moreover, the ALJ cites these Metrocare Services records and describes, in one paragraph each, five separate visits Plaintiff made to Metrocare Services, some of which were visits where she saw APN Monyocho and one of which was a visit where she saw Dr. Raffi. *Id.* at 21-23, 333, 353, 364, 371. This evidences that the

ALJ considered the length and frequency of APN Monyocho's and Dr. Raffi's treatment of Plaintiff. Further, the ALJ acknowledges that Plaintiff first visited Metrocare Services for a psychiatric diagnostic evaluation. *Id.* at 21. The medical records for Metrocare Services, which the ALJ cites, further indicate Plaintiff received only mental health services from APN Monyocho and Dr. Raffi. *Id.* at 350, 353, 345, 356, 360, 364. The hearing decision therefore evidences she considered the nature and extent of these clinicians' treatment of Plaintiff, as well as their specializations as mental health professionals. Finally, the ALJ stated in her hearing decision that "[w]hile the evidence does support that the claimant does experience limitations, the severity of limitations contained in the treating source statement do not comport with the clinical findings and physical examination records." *Id.* at 24. This evidences that she considered whether the opinion was supported by evidence and whether it was consistent with the evidence present in the record.

Thus, while the ALJ perhaps could have expanded upon her analysis of the § 416.927(c) factors, procedural perfection is not required. *Steven T. W.*, 2019 WL 1429347, at *6; *see also Jacquelyn S.,* 2019 WL 4359412, at *5. The ALJ's hearing decision sufficiently evidences that she considered the required factors. Accordingly, the Court concludes that the ALJ did not err in evaluating the opinions of Plaintiff's treating physicians.

10

## B.

"It is the responsibility of the ALJ to interpret 'the medical evidence to determine [a claimant's] capacity for work.'" *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016) (per curiam) (quoting *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)). "'[T]he ALJ is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly.'" *Id.* (brackets in original) (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990) (per curiam)). "If supported by substantial evidence, the Commissioner's findings are deemed conclusive, and the court must accept them." *Jones v. Astrue*, 851 F. Supp. 2d 1010, 1015 (N.D. Tex. 2012) (citing *Richardson,* 402 U.S. at 390). Substantial evidence in this context "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citation omitted).

Here, substantial evidence supports Plaintiff's physical and mental RFC. In making her RFC determination, the ALJ gave SAMCs Leela Reddy, M.D.'s and Lee Wallace's opinions "great weight"; they found that Plaintiff can understand, remember, and carry out simple instructions, make simple decisions, concentrate for extended periods, interact adequately with coworkers and supervisors, and respond appropriately to changes in routine work settings. A.R. 24, 75-76. Plaintiff correctly points out that the non-examining SAMC's opinions taken alone would not be substantial evidence. *See Johnson v. Harris*, 612 F.2d 993, 998 (5th Cir. 1980) (per curiam) ("If it is true that the physicians who reported on [the

11

claimant's] condition did not even see him, this alone would not be substantial evidence on which to base an administrative decision."); *but see Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (citing *Ransom v. Heckler,* 715 F.2d 989, 993-94 (5th Cir. 1983) (per curiam)) ("We believe an ALJ may properly rely on a non-examining physician's assessment when, as in this case, those findings are based upon a careful evaluation of the medical evidence and do not contradict those of the examining physician.").

Here, however, the ALJ did not base her RFC determination on Dr. Reddy's and Lee Wallace's opinions alone. The ALJ's RFC assessment considered "all the evidence related to the claimant's prior work history, and the observation of non-medical third parties, as well as treating and examining physicians." A.R. 26. In particular, the ALJ points to the medical records from Metrocare Services, which reflect that "the claimant . . . consistently presented herself appropriately dressed and groomed [and exhibited normal] . . . attention, concentration, and memory." *Id.* Moreover, the ALJ noted that although Plaintiff argues that she is essentially illiterate, her Adult Disability Report stated she could understand, read, and write English, and her function report indicated that one of her hobbies is reading. *Id.* at 27. The Court also finds that Plaintiff's RFC reflects the "little weight" the ALJ accorded APN Monyocho's opinion. The ALJ acknowledged that Plaintiff has some mental limitations, which the ALJ accounted for in finding that Plaintiff is limited to receiving simple instructions, making simple work-related decisions, and facing only "occasional supervisory and coworker contact." *Id.* at 20.

Finally, in determining Plaintiff's physical RFC, the ALJ considered Plaintiff's testimony as compared to her alleged physical symptoms. The ALJ noted that while Plaintiff maintains she has extremely limited use of her hands, is prone to drop things, and has difficulty handling things and dressing herself, she also testified that she is prone to compulsively clean and organize. *Id.* at 26. Moreover, the ALJ reviewed diagnostic imaging of Plaintiff's hands, which revealed mild to moderate degenerative changes in the hands. *Id.* But the ALJ noted the fact that Plaintiff has been prescribed medication for pain management and hand braces to wear. *Id.* These considerations lead to the RFC that Plaintiff can do light work. Accordingly, the Court concludes that Plaintiff's physical RFC is supported by substantial evidence.

## II.

Plaintiff also argues that the ALJ failed to incorporate limitations which she recognized into Plaintiff's mental RFC. Pl.'s Br. 14. In particular, Plaintiff points out that the ALJ acknowledged Plaintiff has a moderate limitation in her ability to concentrate, persist, or maintain pace, but that the ALJ nonetheless found Plaintiff can maintain attention and concentration for 2-hour segments. Because the Program Operations Manual System dictates that one with basic mental abilities can also concentrate for two hours at a time, Plaintiff argues the ALJ erroneously failed to include in the RFC the moderate mental limitation that she recognized Plaintiff had.

As discussed above, the Court concludes the ALJ's RFC is supported by substantial evidence. But, in any event, Plaintiff's argument ignores that the ALJ limited Plaintiff's mental RFC in respects other than the length of time she can concentrate. Indeed, the ALJ qualified Plaintiff's ability to concentrate for two-hour segments by limiting her to understanding, remembering, and carrying out only *simple* instructions and making *simple* work-related decisions. A.R. 20. Moreover, these findings are consistent with Plaintiff's own account of her limitations—that she needs reminders to take medication and take care of personal needs but that she can prepare her own meals, perform household chores, shop for food, pay bills, count change, and, notably, follow spoken instructions "pretty good." *Id.* at 210-13. The ALJ's limitation to simple instructions and simple work-related decisions take Plaintiff's moderate limitations into account. *Dunson v. Berryhill*, 2018 WL 1427107, at *6 (N. D. Tex. Mar. 22, 2018) (restricting claimant to "simple tasks" adequately incorporated moderate limitation in concentration, persistence, and pace). Indeed, the Court concludes that the ALJ's mental RFC determination that Plaintiff can concentrate for two-hour segments contemplates that Plaintiff's moderate limitations confine her to less complex and detailed work. *Skiles v. Colvin*, 2013 WL 3486921, at *10 n. 19 (N.D. Tex. July 11, 2013) (citing cases for the proposition that limiting claimant to performing work that required one or two simple tasks and maintaining attention and/or concentration for two hour periods between breaks accommodated moderate limitation in ability to maintain concentration, persistence, or pace). Thus, the Court finds that the ALJ

did account for Plaintiff's moderate limitations in determining her mental RFC, and the determination is supported by substantial evidence.

## III.

Finally, Plaintiff argues the ALJ failed to establish the existence of work Plaintiff can perform. Pl.'s Br. 15. Particularly, Plaintiff maintains that the jobs of cleaner, power screwdriver operator, and photocopy machine operator are either not within Plaintiff's RFC as defined by the ALJ or inconsistent with her educational level. *Id.* at 16. Plaintiff's entire argument rests on the idea that, because the Dictionary of Occupational Titles (DOT) is outdated, it should not be applied. *See id.* at 18. Instead, the more recent Standard Occupational Classification Code or Occupational Outlook Handbook should apply, and, under those guidelines, the jobs of cleaner, power screwdriver operator, and photocopy machine operator are now classified as maids and housekeeping cleaners, assemblers and fabricators, and office machine operators, respectively. *Id.* at 18-20. And, as cleaners and housekeepers are required to stand and walk eight hours per day and assemblers and fabricators and office machine operators are required to have a high school diploma or equivalent, Plaintiff cannot do these jobs. *Id.*

"Whether the DOT is outdated is not a determination this Court can make." *Walker v. Berryhill*, 2017 WL 6883894, at *5 (N.D. Tex. Dec. 19, 2017), *rec. adopted*, 2018 WL 339307 (N.D. Tex. Jan. 9, 2018); *see also Sheridan v. Comm'r of Soc. Sec. Admin.*, 2019 WL 6003297, at *9 (E.D. Tex. Aug. 30, 2019), *rec. adopted*, 2019 WL 6002194 (E.D. Tex. Sept. 18, 2019); *Treadaway v. Berryhill*,

15

2018 WL 3862106, at *6 (S.D. Tex. Aug. 13, 2018); *Dunson*, 2018 WL 1427107, at *7. The Regulations explicitly allow the ALJ to employ the DOT in determining whether there is work the claimant can do. *See* 20 C.F.R. § 416.960(b)(2). And use of the DOT is widespread. *See Donahue v. Barnhart*, 279 F.3d 441, 445 (7th Cir. 2002) (collecting the positions of the circuit courts on the amount of authority accorded to the DOT against contrary VE testimony); *Hernandez v. Astrue*, 2007 WL 1746896, at *3 (W.D. Tex. June 15, 2007) (referring to the DOT as "the standard reference guide"); *Gillespie v. Astrue*, 2014 WL 1168872, at *11 n.4 (W.D. La. Mar. 21, 2014) ("VEs typically use the Dictionary of Occupational Titles published by the Department of Labor, the Standard Occupational Classification system published by the Department of Labor, and census reports published by the Bureau of Census."), *aff'd*, 278 F. App'x 333 (5th Cir. 2008) (per curiam). While the ALJ is entitled to supplement his or her findings with information available in reliable publications other than the DOT (SSR 00-4P, 2000 WL 1898704 (Dec. 4, 2000)), the ALJ did not do so here. This is not error, and the Court cannot substitute its own judgment for the judgment of the ALJ in discerning which publications to consult in reaching its decision. Plaintiff does not argue that, as they are listed under the DOT, she cannot do the jobs of cleaner, assembler and fabricator, or photocopy machine operator. Thus, the ALJ did not fail to establish the existence of work Plaintiff can perform, and the ALJ's decision is supported by substantial evidence.

## Recommendation

For the foregoing reasons, the hearing decision of the ALJ should be AFFIRMED in all respects.

Signed December 27, 2019.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk is directed to serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, § 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 14 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation will bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the findings, conclusions, and recommendation within 14 days after being served with a copy will bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).